# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HEALTH REPUBLIC INSURANCE
COMPANY,

        Plaintiff,
        on behalf of itself and all others
        similarly situated,

    vs.

THE UNITED STATES OF AMERICA,

        Defendant.

No. 1:16-cv-00259-MMS
(Judge Sweeney)

**PLAINTIFF HEALTH REPUBLIC INSURANCE COMPANY'S RESPONSE TO THE GOVERNMENT'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff Health Republic Insurance Company ("HRIC") respectfully submits the following response to the United States' Notice of Supplemental Authority (Dkt. 24), which cites and provides argument in further support of the pending Rule 12(b)(1) motion to dismiss based on Judge Lettow's recent decision in *Land of Lincoln Mutual Health Ins. Co. v. United States*, No. 16-744C, 2016 WL 6651428 (Fed. Cl. Nov. 10, 2016).

The *Land of Lincoln* decision demonstrates why the United States' motion to dismiss in this case should be denied. The court there found it had subject matter jurisdiction over claims nearly identical to HRIC's and the putative class's here, because "Section 1342 and the implementing regulation are money-mandating sources of law," and because "the government concedes at least *some* money was due and more may be due shortly." *Id.* at *9 (emphasis in original). *Land of Lincoln* rejected the jurisdictional argument (also made here in the motion to dismiss) that a plaintiff must do any more than invoke a money-mandating source and make a "non-frivolous assertion" that the plaintiff is entitled to relief from that source. *Id.* at *8. Similarly, the *Land of Lincoln* court concluded the claims were ripe because (a) "[t]he dispute centers on an issue of statutory interpretation and is therefore fit for judicial review," and (b) the plaintiff suffered hardship in the form of $74 million in alleged losses from HHS's failure to pay 2014 and 2015 risk corridors amounts on an annual basis. *Id.* at *12-13.

Subject matter jurisdiction and ripeness are the only arguments the United States raises in its pending motion to dismiss. *See generally* Dkt. 8 & 14. *Land of Lincoln* thus supports HRIC's opposition, not the United States' motion. (Moreover, since *Land of Lincoln* was handed down, HRIC's and the putative class's hardship has demonstrably increased, as they noted it would in their opposition brief. HHS recently announced that the 2015 plan year risk corridors deficit was approximately $5.8 billion,[1] meaning that 2014 amounts remain unpaid and the class's collective risk corridors deficit for 2014 and 2015 is now **$8.3 billion**.)

---

[1] *See* CMS, "Risk Corridors Payment and Charge Amounts for the 2015 Benefit Year" (Nov. 18, 2016), *available at* https://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/2015-RC-Issuer-level-Report-11-18-16-FINAL-v2.pdf (last visited Nov. 30, 2016).

To the extent the United States attempts to use *Land of Lincoln*'s merits determination regarding statutory interpretation as a basis for dismissal here, HRIC strongly opposes that argument on three grounds. *First*, as noted above, the United States' only pending dismissal arguments are jurisdictional in nature and fail because the "presently due" arguments that form the centerpiece of the motion to dismiss are fundamentally meritless. Yet the Government asks the Court to convert its 12(b)(1) motion to a 12(b)(6) motion and hold that the risk corridor program is not required to make full annual payments.[2] The Court should decline the United States' invitation to rule on a motion it has not filed and the parties have not fully briefed.

*Second*, the outcome in *Land of Lincoln* is distinguishable because the plaintiff there voluntarily sought a determination under RCFC 52.1 based on an "administrative record" without any additional discovery. RCFC 52.1, however, does not apply to the claims in this case because the claims are not based on any "proceedings before an agency."[3] This incorrect application of RCFC 52.1 led the court to apply the Administrative Procedure Act's extremely deferential standard in reviewing HHS's determination. *Land of Lincoln*, 2016 WL 6651428, at *14 (stating court would uphold agency's "decision" as long as it was "not contrary to law"). As HRIC has already pointed out, the APA does not apply to this case. *See* Dkt. 11 at 38-39. Furthermore, the limited *Land of Lincoln* "administrative record" omitted important evidence regarding HHS's pre-litigation statements and positions—evidence that negates HHS's current interpretation of the ACA. *See*, *e.g.*, Dkt. 11 at 6, 11-12, 24. HRIC intends to obtain further examples of such evidence through discovery in this case. This misapplication of RCFC 52.1 and the differences in the factual record alone distinguish *Land of Lincoln*.

*Third*, and respectfully, Judge Lettow erred in applying *Chevron* deference to HHS's

---

[2] In fact, the Government specifically disclaimed it was arguing QHPs were not entitled to payments in excess of appropriated amounts: "But whether the program must, in fact, be budget neutral is not before the Court at this time." Dkt 14 at 8 n.5.

[3] RCFC 52.1 provides that "[w]hen proceedings before an agency are relevant to a decision in a case, the administrative record of those proceedings must be certified by the agency and filed with the court." RCFC 52.1(a). Neither party here has claimed that "proceedings before an agency" are relevant to HRIC's and the putative class's claims.

most recent interpretation of the ACA. *Land of Lincoln* is therefore not persuasive, let alone binding, authority.[4] To this point, *Chevron* deference applies only if the relevant statute is ambiguous, *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), but as discussed in HRIC's pending opposition brief, traditional principles of statutory interpretation make clear there is no ambiguity as to the timing of risk corridors payments. *See* Dkt. 11. Section 1342 requires HHS to establish a "program of risk corrido<u>r</u>s" for each of 2014, 2015, and 2016. Dkt. 11 at 23. All calculations for the program are on a plan-year basis. *Id.* at 23-24. The insurance premiums the program stabilizes are annual, as are the determinations to permit an issuer to provide a QHP on an ACA health exchange. *Id.* at 24. Without annual payments, those premiums would need to go up in 2015 and 2016 in order to cover outsized losses in 2014. *Id.* at 29-30. The ACA also mandated that, except for the exact method of calculating risk corridor amounts, the mechanics of the program be "based on" the Part D Medicare program, which was itself based on previous annual risk corridor programs and requires annual payments both to and from the government. *Id.* at 25-26, 28-29. The risk corridors program was also intertwined with the other two "3R" programs and allowed reductions based on those programs on a plan-year basis. *Id.* at 26-27.

*Land of Lincoln* either did not address these issues or rejected them without justification.[5]

---

[4] Indeed, another Judge in a different a "risk corridors" case recently noted with respect to the *Land of Lincoln* opinion that lower courts are "free to consider similar facts and reach independent conclusions." *Moda Health Plan v. United States*, No. 1:16-cv-00649-TCW, Dkt. 12, at 2 (Fed. Cl. Nov. 28, 2016).

[5] For example, *Land of Lincoln* cites a definition of "risk corridors" in the subsequent implementing regulations for the proposition that the use of the plural in Section 1342 really meant a single "payment adjustment system." *Land of Lincoln*, 2016 WL 6651428, at *16 n.20. That definition, however, was not ***in the ACA itself***. As HRIC noted in its opposition brief, the use of the plural "risk corridors" in the context of the ACA and the Part D Medicare program on which it is based makes clear that there must be separate risk corridors for each of the plan years covered by the ACA program: 2014, 2015, and 2016. Dkt. 11 at 23-26.

Similarly, *Land of Lincoln* concludes the ACA did not mandate annual risk corridor payments because it omitted language from the Part D program requiring HHS to establish a risk corridor "for each plan year." 2016 WL 6651428, at *17. This semantical argument ignores that, unlike the Part D program—which is permanent and therefore does not need to specify its duration—the ACA program is limited to 2014, 2015, and 2016. The statute therefore stated that the "program of risk corridors" was for "calendar years 2014, 2015, and 2015." 42 U.S.C.

It then concluded there was a gap in the statute permitting HHS to determine when risk corridors payments may occur, and that this determination triggered the *Chevron* deference inquiry. 2016 WL 6651428, at *17. Respectfully, HRIC disagrees on both points for the reasons set forth above.

Even assuming *Land of Lincoln* correctly proceeded to the second step of the *Chevron* analysis, however, it failed to apply the proper standard regarding whether HHS's three-year payment framework was a "reasonable" interpretation of the statute. If an agency's original policy creates "serious reliance interests," then a subsequent change is facially arbitrary and capricious—and "receives no *Chevron* deference"—without a reasoned explanation from the agency for that change. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125-26 (2016). *Chevron* deference is "likewise unwarranted when there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question," such as "when the agency's interpretation conflicts with a prior interpretation," *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167 (2012), or when the interpretation is "nothing more than an agency's convenient litigating position . . . ." *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 213 (1988). With respect to the ACA specifically, the Supreme Court has noted an interpretation that destabilizes the health insurance exchange regime is manifestly contrary to the statute's purpose. *King v. Burwell*, 135 S. Ct. 2480, 2496 (2015). Similarly, Courts should not apply *Chevron* deference to ACA-related interpretations where the issue involves "a question of deep 'economic and political significance' that is central to the [ACA's] statutory scheme," as well as "billions of dollars in spending each year and [which] affect[s] the price of health insurance for millions of people." *Id.* at 2489.

This law is critical in interpreting the ACA and demonstrates why *Land of Lincoln* also erred by finding HHS's three-year payment framework "reasonable." HHS's initial interpretation of Section 1342 (from 2010-2013) was consistent with every QHP issuer's

---

§ 18062(a). It then stated the program must be based on the annual Part D program, which, as noted, requires annual risk corridors and annual payments. *Id.*

4

understanding of the risk corridors program: that it required annual payments. HHS admitted the risk corridors program only incentivized issuers to provide QHPs on the ACA exchanges if they were guaranteed "prompt payment," and that issuers and HHS must make payments at the same time. Dkt. 11 at 11 (quoting 2011 and 2012 Federal Register entries). HHS also admitted that the "risk corridors program is not statutorily required to be budget neutral" and required full payment "*[r]egardless of the balance of payments and receipts*." *Id.* at 12 (quoting 2013 78 Fed. Reg. 15410, 15473) (emphasis added). It was only after these three years of such representations and after hundreds of issuers first began offering QHPs on the ACA exchanges due to these representations (*i.e.*, after being told they would receive and/or make annual risk corridors payments) that HHS suddenly—outside of the legislative process and despite the statutory language—established its budget neutral, three-year framework. Dkt. 8 at 7-8 (quoting applicable 2014 and 2015 Federal Register entries). Under these circumstances, even the preliminary facts available to HRIC without discovery indicate HHS did not engage in a "fair and considered judgment" worthy of *Chevron* deference. *Christopher*, 132 S. Ct. at 2167. Moreover, given the three-year payment framework's demonstrably destabilizing effects (which HHS did not address in its change despite the serious reliance interests at play), it is likewise clear under *Burwell* and *Encino Motorcars* that HHS's interpretation simply is not "reasonable."

The establishment of the health insurance exchanges is a central facet of the ACA, providing access to insurance that millions of Americans did not have before. *Burwell*, 135 S. Ct. at 2485. The United States admits the 3R programs were designed to stabilize those exchanges in their early, very risky years, when insurers had little information about this new insured pool's demographics. Dkt. 8 at 4. HHS's about-face decision to pay risk corridors amounts only at the end of the risky startup period, however, has caused widespread chaos and destabilized the very exchanges the risk corridors program was meant to protect. Given the exchanges' centrality to the ACA regime, and the unambiguous text of the statute, this Court owes no deference to HHS's recent interpretation. Even if *Chevron* applied, however, the interpretation so contrary to the statute's purpose that it must be rejected as unreasonable.

DATED: December 6, 2016

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*s/ Stephen Swedlow*
Stephen Swedlow
stephenswedlow@quinnemanuel.com
500 W. Madison Street, Suite 2450
Chicago, Illinois 60661-2510
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

J.D. Horton
jdhorton@quinnemanuel.com
Adam B. Wolfson
adamwolfson@quinnemanuel.com
865 S. Figueroa Street
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Health Republic Insurance Company and the Class

**CERTIFICATE OF SERVICE**

I certify that on December 6, 2016, a copy of the attached **PLAINTIFF HEALTH REPUBLIC INSURANCE COMPANY'S RESPONSE TO THE GOVERNMENT'S NOTICE OF SUPPLEMENTAL AUTHORITY** was served via the Court's CM/ECF system on all counsel of record.

<em>s/ Stephen Swedlow</em><br>
Stephen Swedlow