## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16-cv-259C |
| THE UNITED STATES, | ) ) | Filed: August 19, 2022 |
| Defendant. | ) ) ) | |

## OPINION AND ORDER

Following the Supreme Court's decision in *Maine Community Health Options v. United States*, 140 S. Ct. 1308 (2020), which held that Defendant was liable to Qualified Health Plan issuers ("QHP") for unpaid risk-corridors payments under Section 1342 of the Patient Protection and Affordable Care Act ("ACA"), Defendant amended its Answer to assert a counterclaim against members of the Dispute Subclass. This subclass originally included four QHPs who disputed either the amount of the payments owed to them, Defendant's right to offset debts against a judgment in their favor, and/or the extent of any such offset. Of the original four members of the Dispute Subclass, only Colorado Health Insurance Cooperative, Inc. ("Colorado HealthOp") remains.[1] Defendant's counterclaim seeks payments owed by Colorado HealthOp to the Department of Health and Human Services ("HHS"), Centers for Medicare & Medicaid Services ("CMS") under a variety of ACA programs, as well as unpaid interest on those payments.

---

[1] The parties have since resolved all claims as to the other subclass members, Meritus Health Partners and Meritus Mutual Health Partners (collectively, "Meritus") and Freelancers Co-Op of New Jersey, and the Court entered judgment accordingly. *See* Rule 54(b) J., ECF No. 124 (Freelancers Subclass); Rule 54(b) J., ECF No. 156 (Meritus Subclass).

Colorado HealthOp now moves to dismiss Defendant's counterclaim for lack of subject-matter jurisdiction, arguing that the Court's authority to entertain Defendant's counterclaim is reverse preempted by the McCarran-Ferguson Act ("MFA"), 15 U.S.C. § 1011 *et seq.*, and, in the alternative, it fails to state claims for offset and interest upon which relief may be granted. For the reasons below, the Court concludes that it has jurisdiction over Defendant's counterclaim. However, to the extent the counterclaim seeks an offset against the amounts owed by Colorado HealthOp and interest on those amounts, it lacks a lawful basis. Accordingly, Colorado HealthOp's motion is **DENIED IN PART** and **GRANTED IN PART**.

## I.   BACKGROUND

### A.   Factual Background

The ACA established the Consumer Operated and Oriented Plan program ("CO-OP program") for the purpose of helping create nonprofit health insurance issuers known as CO-OPs. *See* Def.'s Am. Answer & Countercl. ¶ 8, ECF No. 101 (citing 42 U.S.C. § 18042(a)(1)–(2)). Under this program, CO-OPs could obtain start-up loans to cover their start-up costs and other loans to help CO-OPs meet the solvency and capital reserve requirements in their states of licensure. *Id.* (citing 42 U.S.C. § 18042(b)(1)). CMS is authorized by regulation to collect any debt owing by QHPs that failed to make loan payments when due, and the loan agreements preserved HHS's right to collect the debt through offset. *Id.* ¶ 9 (citing 45 C.F.R. § 156.520(d) and Loan Agreement § 19.12). To help mitigate pricing risks and incentives for adverse selection, the ACA established three premium-stabilization programs informally known as the "3Rs"—the reinsurance, risk adjustment, and risk corridors programs—which are funded by amounts paid into the programs by QHPs. *Id.* ¶ 10 (citing 42 U.S.C. §§ 18061–63); *see id.* ¶ 11. Payments of premium tax credits, cost-sharing reductions ("CSR"), and CSR reconciliation payments

constituted a significant source of the financial transfers between QHPs and HHS under the ACA. *Id.* ¶ 16.  In connection with the risk adjustment program, the ACA and implementing regulations also required payment of user fees.  *Id.* ¶ 17 (citing 42 U.S.C. §§ 18031(d)(5), 18041(c)(1), 18063; 45 C.F.R. § 153.610(f)).  In short, the ACA created a framework in which Defendant and QHPs were mutually obligated to each other.  As part of the payments and collection process, the implementing regulations permitted HHS to net payments owed to QHPs against the amounts due from them.  *Id.* ¶ 18 (citing 45 C.F.R. § 156.1215).

In 2012, Colorado HealthOp received start-up and solvency loans under the CO-OP program.  *Id.* ¶ 20.  It also sold policies on Colorado's ACA state exchange during the 2014 and 2015 benefit years and participated in the premium-stabilization programs administered by HHS. *Id.* ¶¶ 23, 50.  According to Colorado HealthOp, because of Defendant's failure to remit risk-corridors payments to QHPs, Colorado HealthOp lost over $111 million from its participation in the risk corridors program.  Pl.'s Mot. to Dismiss Def.'s Countercl. at 8–9, ECF No. 103. Insolvency followed, and Colorado HealthOp entered liquidation in January 2016.  *See* ECF No. 101 ¶¶ 24–25.  Michael Conway was named as Colorado HealthOp's liquidator, who is charged with collecting and distributing its assets.  *See* ECF No. 103 at 10.  Defendant has filed a proof of claim in the liquidation proceeding for the same payments of Colorado HealthOp owing to the United States that are the subject of its counterclaim.  *See id.* at 9; *see* Hr'g Tr. at 54:25–55:3, ECF No. 159.

On October 19, 2018, during the pendency of this risk-corridors litigation, Mr. Conway brought a separate suit in the Court of Federal Claims seeking reinsurance payments owed to Colorado HealthOp under the ACA.  *See Conway v. United States*, 145 Fed. Cl. 514 (2019).  In that case, HHS intended to administratively offset Colorado HealthOp's risk adjustment payments

against HHS's reinsurance payments.  *See id.* at 525.  According to Conway, the offset violated Colorado's insurer insolvency law, which prevents parties owing money to an insolvent insurer from offsetting non-contractual debts of the insurer against the funds owed to it.  *See id.* Interpreting Colorado's insurer insolvency law, the trial court in *Conway* held that HHS was not entitled to offset.  *See id.* at 529.  The Government appealed.

On May 17, 2021, following the conclusion of briefing on the instant motion, the United States Court of Appeals for the Federal Circuit affirmed the trial court, holding that HHS could not leapfrog other creditors in the Colorado insolvency proceeding by offsetting the amounts that Colorado HealthOp owed in risk adjustment payments against the amounts HHS owed for reinsurance payments.  *See Conway v. United States*, 997 F.3d 1198, 1201 (Fed. Cir. 2021).  The Federal Circuit determined that Colorado law limited permissible offsets in insurer insolvency proceedings to only those arising from contractual obligations and that neither the ACA nor its implementing regulations demonstrated Congress's intent to preempt state creditor priority laws. *Id.* at 1205–06, 1211, 1214.  The Court also held that federal common law and other federal statutes likewise did not override Colorado's liquidation priority scheme.  *Id.* at 1214–16.

### B.  Procedural History

On August 3, 2020, shortly after the Court certified the Dispute Subclass, Defendant moved to amend its Answer to assert a counterclaim.  *See* Def.'s Mot. for Leave to Am. Answer, ECF No. 85.  In opposition, Colorado HealthOp argued that amendment would be futile for many of the same reasons forming the basis of the instant motion, including that this Court's authority to hear and determine Defendant's claim must yield to the Colorado liquidation court pursuant to the McCarran-Ferguson Act.  *See* Pl.'s Br. in Opp'n to Def.'s Mot. for Leave to Am. Answer at 18–24, ECF No. 86.  On September 30, 2020, the Court granted Defendant's motion.  *See Health*

*Republic Ins. Co. v. United States*, 150 Fed. Cl. 233 (2020) (Sweeney, J.).  After recognizing it had jurisdiction under 28 U.S.C. §§ 1503 and 2508 to hear and determine Defendant's assertion of a setoff, the Court rejected the contention that Defendant's counterclaim was barred by the McCarran-Ferguson Act.  *See id.* at 237, 241–42.  The Court found the premise of that argument erroneous because the United States' right to assert a setoff derives from common law and not an Act of Congress.  *See id.* at 241.  As the Court explained, the jurisdictional statutes Defendant invokes, "and upon which the subclass's contention hinges[,] merely provide that any claim for setoff raised by defendant against a plaintiff bringing suit in this court can and must be heard and decided by this court."  *Id.*  The Court also noted the then-pending appeal in *Conway*, addressing a "similar issue" about whether "the pertinent state priority statutes preempt defendant's proposed setoffs in this court . . . ."  *Id.* at 242 n.10.

On October 30, 2020, Defendant filed an Amended Answer stating a counterclaim against Colorado HealthOp for breach of statutory and regulatory duties arising from its failure to pay CMS risk adjustment charges, reinsurance contributions, CSR reconciliation charges, and risk adjustment user fees.  *See* ECF No. 101 ¶¶ 26–33, 52–55.  Defendant alleges these outstanding payments total approximately $20 million.  *See id.*  Defendant also alleges that it is entitled to continually accruing interest on these payments totaling, as of July 15, 2020, approximately $7.3 million.  *Id.* ¶¶ 34, 56.  The Amended Answer and Counterclaim concedes Colorado HealthOp's entitlement to the outstanding risk-corridors payments, which according to Colorado HealthOp total over $111 million.  *See id.* at 1; ECF No. 103 at 9.  Defendant avers that "the damages due to [Colorado HealthOp] are subject to offset as set forth in the United States' counterclaim."  ECF No. 101 at 1.

Colorado HealthOp moved to dismiss Defendant's counterclaim on November 20, 2020. It argues that the McCarran-Ferguson Act reverse preempts the Court's jurisdiction under 28 U.S.C. §§ 1503 and 2508.  *See* ECF No. 103 at 13–17.  In the alternative, it argues that Defendant's offset claim fails as a matter of law because it is prohibited by Colorado's insurer insolvency law and not permitted by federal common law.  *See id.* at 20–29.  It also contends that Defendant's interest claim fails because a claim for interest is not available when the Government is the net debtor and, in any event, any accrued interest became fixed upon the issuance of the liquidation order.  *See id.* at 17–20.  In response, Defendant argues that §§ 1503 and 2508 require the Court to give effect to its counterclaim for offset and that, for various reasons, the McCarran-Ferguson Act does not apply.  *See* Def.'s Opp'n to Mot. to Dismiss Countercl. at 17–28, ECF No. 112. Defendant asserts that its right to setoff is well founded in federal common law, does not conflict with Colorado's priority scheme, and is in fact consistent with the offset recognized in Colorado's insurer insolvency law.  *Id.* at 35–39.  Finally, it claims Colorado HealthOp mischaracterizes Defendant's interest claim as seeking pre-judgment interest and that, just as with jurisdiction, the McCarran-Ferguson Act does not apply.  *Id.* at 31–34.

The Court held oral argument on April 27, 2022.  The parties subsequently submitted supplemental briefing to address the Federal Circuit's decision in *Conway* and a recent Court of Federal Claims decision, *Richardson v. United States*, 157 Fed. Cl. 342 (2021), *appeal docketed*, No. 22-1520 (Fed. Cir. Mar. 10, 2022).  *See* Pl.'s Suppl. Br., ECF No. 161; Def.'s Suppl. Br., ECF No. 164; Pl.'s Reply, ECF No. 166; Def.'s Surreply, ECF No. 169.[2]

---

[2] Colorado HealthOp's reply in support of its supplemental brief included a request to strike part of Defendant's supplemental brief as beyond the scope of the Court's supplemental briefing order.  *See* ECF No. 166 at 2 & n.1.  The Court agrees that a substantial portion of Defendant's brief is not related to the discrete topics to which supplemental briefing was limited—*i.e.*, the *Conway* and *Richardson* decisions.  *See* Order, ECF No. 157.  Rather, the first half of the brief

## II.  DISCUSSION

### A.    Standards of Review

#### 1.    Rule 12(b)(1) Motion

Subject-matter jurisdiction is a threshold matter; without it, "the only function remaining to the court is that of announcing the fact and dismissing the [case]." *Ex parte McCardle*, 74 U.S. 506, 514 (1868); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  When deciding a motion to dismiss for lack of subject-matter jurisdiction, "the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018) (internal quotation marks omitted) (citations omitted).  Where jurisdictional facts are challenged, however, the Court may resolve the factual disputes and consider evidence outside of the pleadings. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).  The plaintiff bears the burden of proving jurisdiction by the preponderance of the evidence.  *See Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1337–38 (Fed. Cir. 2020) (citing *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010)).

#### 2.    Rule 12(b)(6) Motion

In determining whether a counterclaim survives dismissal under Rule 12(b)(6), the Court generally looks to whether the defendant's "allegations plausibly suggest[]" entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (requiring a pleading to contain factual

---

essentially re-argues or expounds upon points covered by the parties' original briefs, which cannot fairly be construed as "updates or developments in the law," ECF No. 169 at 3 (citing ECF No. 159 at 66:7–13), since all the cases cited in section I of the discussion (except for a few references to *Conway*) post-date the motion to dismiss.  Although the Court does not find it necessary to formally strike the non-responsive portion of Defendant's brief, it has not considered it in ruling on the instant motion and finds Defendant's conduct contrary to both the plain text and clear intent of the Court's offer to allow supplemental briefing.

allegations sufficient "to raise a right to relief above the speculative level"). The Court "must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). As with a complaint, a counterclaim should be dismissed if it is "fatally flawed in [its] legal premises and destined to fail." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

**B.      The Court Has Jurisdiction to Hear and Determine Defendant's Counterclaim.**

Colorado HealthOp's motion presents an unresolved question of law in this Court: whether state laws "regulating the business of insurance" reverse preempt under the McCarran-Ferguson Act the federal statutes granting the Court of Federal Claims jurisdiction over Defendant's counterclaim.[3] 15 U.S.C. § 1012(b); *see* ECF No. 103 at 13. According to Colorado HealthOp, Colorado's insurer insolvency statute provides the Colorado liquidation court with exclusive jurisdiction over any liquidation-related actions, including Defendant's claims for offset and interest. *See* ECF No. 103 at 15 (citing Colo. Rev. Stat. § 10-3-504(2)). It contends that the Colorado law reverse preempts 28 U.S.C. §§ 1503 and 2508, since the latter federal statutes do not

---

[3] These statutes are 28 U.S.C. § 1503 (1992) and 28 U.S.C. § 2508 (1992). Section 1503 provides this Court with "jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court." 28 U.S.C. § 1503. Section 2508 provides:

> Upon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff. If upon the whole case it finds that the plaintiff is indebted to the United States it shall render judgment to that effect, and such judgment shall be final and reviewable.

*Id.* § 2508.

regulate the business of insurance and purportedly invalidate, impair, or supersede the state law. *See id.* at 13–17.

Defendant presents several arguments in opposition.  It contends that by invoking the Court's Tucker Act jurisdiction to bring a money claim against the United States, Colorado HealthOp is subject to the Court's concomitant jurisdiction over any setoff, counterclaim, or other demand asserted in response.  *See* ECF No. 112 at 19.  Defendant further argues that the McCarran-Ferguson Act is inapplicable for a variety of reasons, including that the Act is aimed at legislation enacted under Congress's Commerce Clause authority and that the Court's jurisdictional statutes do not directly conflict with, invalidate, impair, or supersede the jurisdictional provisions of Colorado's insurer insolvency law.  *See id.* at 22–28.

The McCarran-Ferguson Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012(b).  Congress enacted the McCarran-Ferguson Act in 1945 in reaction to the Supreme Court's decision in *United States v. South-Eastern Underwriters Association*, 322 U.S. 533 (1944), which held for the first time that "regulation of interstate insurance was within Congress' power pursuant to the Commerce Clause."  *Greene v. United States*, 440 F.3d 1304, 1311 (Fed. Cir. 2006).  Congress's purpose in enacting the McCarran-Ferguson Act was to "prevent general federal laws from interfering with state insurance regulations," and more specifically, general laws enacted pursuant to Congress's commerce authority.  *Maynard v. CGI Techs. & Sols., Inc.*, 227 F. Supp. 3d 773, 777 (E.D. Ky. 2017) (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 780 (6th Cir. 2004)); *see Greene*, 440 F.3d at 1311 ("The [Act] provides that statutes enacted pursuant to Congress's Commerce Clause powers could not preempt state insurance laws

unless the federal statute has *explicitly* provided for such preemption."). To determine whether the Act applies, courts must analyze whether (1) the state law at issue was "enacted for the purpose of regulating the business of insurance," (2) the federal law at issue "specifically relat[es] to the business of insurance," and (3) the application of the federal law "would invalidate, impair, or supersede" the state law. *U.S. Dep't of the Treasury v. Fabe*, 508 U.S. 491, 501 (1993); *see Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999).

Although broadly worded, both the Supreme Court and Federal Circuit have emphasized that the scope of the McCarran-Ferguson Act is limited and "does not create reverse field preemption." *Greene*, 440 F.3d at 1312; *see Humana*, 525 U.S. at 308 ("We reject any suggestion that Congress intended to cede the field of insurance regulation to the States, saving only instances in which Congress expressly orders otherwise."). As such, precedent demonstrates that courts should closely scrutinize whether the McCarran-Ferguson Act applies to the relevant state and federal laws at issue in accordance with the meaning of the Act's terms. *See Fabe*, 508 U.S. at 508 (holding that the priority scheme in Ohio's insurer insolvency statute "regulat[ed] the business of insurance" only to the extent that it protected policyholders who sought payment on their claims, but not to the extent it protected other creditors); *Humana*, 525 U.S. at 310 (rejecting broad interpretation of the phrase "invalidate, impair, or supersede" in favor of a construction that required direct conflict between the state and federal laws, the federal law's frustration of a declared state policy, or the federal law's interference with a state's administrative regime); *see also Greene*, 440 F.3d at 1316–17. Moreover, the Supreme Court has suggested in some cases that the Act is directed at federal laws that were passed under Congress's commerce power, finding the Act inapplicable in other areas. *See, e.g.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 428 (2003) (holding that a California state insurance law did not reverse preempt an executive

agreement executed in furtherance of the President's conduct of foreign policy); *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 881 (1985) (holding that the McCarran-Ferguson Act did not exempt state insurance laws from the requirements of the Equal Protection Clause); *see also ESAB Grp. Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 388–89 (4th Cir. 2012) (discussing *Garamendi* and several circuit court decisions finding the McCarran-Ferguson Act inapplicable in cases involving non-Commerce Clause statutes); *but see Fabe*, 508 U.S. at 508 (involving a federal priority statute, 31 U.S.C. § 3713, not alleged to be enacted under the Commerce Clause).

Indeed, as particularly relevant here, several United States Courts of Appeal have rejected or expressed skepticism towards the notion that Congress intended the McCarran-Ferguson Act to reverse preempt federal jurisdictional statutes. *See Suter v. Munich Reins. Co.*, 223 F.3d 150, 161 (3d Cir. 2000) (removal jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 205); *Gross v. Weingarten*, 217 F.3d 208, 222 (4th Cir. 2000) (diversity jurisdiction, 28 U.S.C. § 1332); *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 724 n.39 (5th Cir. 2009) (diversity and federal question jurisdiction, 28 U.S.C. §§ 1331–32); *William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 862–63 (6th Cir. 2021) (diversity jurisdiction, 28 U.S.C. § 1332); *Hammer v. U.S. Dep't of Health & Hum. Servs.*, 905 F.3d 517, 530, 534 (7th Cir. 2018) (removal jurisdiction, 28 U.S.C. § 1442); *Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 843–44 (9th Cir. 2005), *amended* 433 F.3d 1089 (9th Cir. 2006) (diversity jurisdiction, 28 U.S.C. § 1332); *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 702–03 (10th Cir. 1988) (same).

Two of these cases—*Gross* and *Hammer*—presented similar procedural or factual circumstances. Like the instant case, *Gross* involved an action brought in federal district court by the deputy receiver of an insolvent life insurance company that was subject to a liquidation

proceeding in state court. *See* 217 F.3d at 211. The receiver alleged various causes of action in tort, and the defendants (who were directors of the insolvent company and directors/shareholders of its parent company) asserted counterclaims. *See id.* The district court severed the counterclaims and ultimately dismissed them for lack of jurisdiction, holding that the receivership court had exclusive jurisdiction over any claims against the insolvent insurer pursuant to its order enjoining claims against the insurer except as permitted by the receiver. *See id.* The Fourth Circuit reversed. It began its analysis by noting that "[t]he Supreme Court has repeatedly and unequivocally rejected the deputy receiver's contention that a state may oust the federal courts of jurisdiction by creating an exclusive forum for claims against an estate." *Id.* at 221. Following the Fifth Circuit, it expressed skepticism "that Congress intended, through the McCarran-Ferguson Act, to remove federal jurisdiction over every claim that might be asserted against an insurer in state insolvency proceedings." *Id.* at 222 (citing *Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585, 595 (5th Cir. 1998); *Martin Ins. Agency v. Prudential Reins. Co.*, 910 F.2d 249, 254 (5th Cir. 1990)). In any event, it held that exercising diversity jurisdiction over the defendants' counterclaims would not "invalidate, impair, or supersede" the state insolvency proceeding. While the court was determining the defendants' rights, any judgment in their favor would have to be presented to the receivership court, which maintained its jurisdiction over the liquidation and the distribution of the insolvent insurer's assets. *Id.*

*Hammer* involved similar parties and claims. That case was initiated by the liquidator of an insolvent insurer that, like Colorado HealthOp, participated in the ACA's premium-stabilization programs. *See* 905 F.3d at 523. The liquidator moved in the state court overseeing the liquidation proceeding for an order declaring as unlawful HHS's use of administrative offset for ACA payments owed by the insurer. *See id.* The liquidator argued that HHS's action violated the state

court's order prohibiting creditors from setting off or netting payments without prior leave of court. *See id.* HHS removed the action to federal district court pursuant to 28 U.S.C. § 1442 and moved for dismissal on sovereign immunity grounds. *See id.* at 524. The district court granted the liquidator's motion for remand to the state court, holding that the removal provision invoked by HHS was inapplicable and, in any event, abstention was warranted in part due to the federal policy favoring state regulation of insurance as codified in the McCarran-Ferguson Act. *See id.* The Seventh Circuit reversed. Although discussed in the context of the trial court's abstention ruling, the Court agreed with the numerous other circuits rejecting the argument that the McCarran-Ferguson Act reverse preempts federal jurisdictional statutes. *See id.* at 534. Where, as here, the amount of and liability for the parties' mutual debts involved federal questions and was not in dispute, the Court "conclude[ed] that removal does not 'invalidate, impair, or supersede' any law regulating insurance, when the same substantive law will be considered in either forum."[4] *Id.* (citing *Hawthorne Sav.*, 421 F.3d at 843).

Considering the unique nature of this Court's jurisdiction, there is even more reason to be skeptical of the contention that the McCarran-Ferguson Act reverse preempts the Court's authority to hear and determine Defendant's counterclaim pursuant to 28 U.S.C. §§ 1503 and 2508. As another judge of the court previously explained, the creation of the Court of Federal Claims "involved a significant waiver of sovereign immunity. . . . The act was not one of pure grace, however." *Ingalls Shipbuilding, Inc. v. United States*, 13 Cl. Ct. 757, 763 (1987), *rev'd on other grounds*, 857 F.2d 1448 (Fed. Cir. 1988). Because "the government as sovereign has legitimate

---

[4] On remand from the Seventh Circuit, the district court granted HHS's motion to dismiss the liquidator's claim for lack of jurisdiction, holding that an adequate remedy was available in the form of a claim for money damages against the United States in the Court of Federal Claims. *See Fry v. Ctr. for Medicaid & Medicare Servs.*, 402 F. Supp. 3d 460, 466–67 (N.D. Ill. 2019).

interests that other litigants do not," its consent to be sued in this Court "may be, and is, conditioned upon the right of the government to have all aspects of a [plaintiff's] claim determined in a single proceeding."  *Id.*; *see Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539 (1946) (explaining that the purpose of counterclaim jurisdiction is "to permit the Government, when sued in the Court of Claims, to have determined in a single suit all questions which involve[] mutual obligations between the Government and [the] claimant").  Consistent with that understanding, long-standing precedent holds that a plaintiff invoking the jurisdiction of the Court of Federal Claims "subjects itself to the possibility of a judgment against it on any setoff, claim, or demand the government may have against it."  *Americold Corp. v. United States*, 28 Fed. Cl. 747, 750 (1993) (citing *Frantz Equip. Co. v. United States*, 105 F. Supp. 490, 494–95 (Ct. Cl. 1952)); *see McElrath v. United States*, 102 U.S. 426, 440 (1880) ("Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counterclaim, or other demand of the government, upon which judgment may go against him . . . .").

That a plaintiff suing in this Court is insolvent or bankrupt does not itself impact the scope of or conditions on the Government's consent to be sued.  This point was made clear by the Federal Circuit's predecessor court in *Preuss v. United States*, 412 F.2d 1293 (Ct. Cl. 1969).  *Preuss* involved a contract claim brought by the trustee of a then-bankrupt government contractor seeking an equitable adjustment or, alternatively, breach of contract damages.  *See id.* at 1294–95.  The trustee argued that the Court lacked jurisdiction over the Government's counterclaim for unliquidated progress payments because it had already asserted a claim for the same debt in the bankruptcy court.  *See id.* at 1303.  The Court held that the plain language of §§ 1503 and 2508 recognized the Government's ability to assert any setoff, counterclaim, or other demand against a

plaintiff suing in this Court and provided the Court jurisdiction to adjudicate such claims. *See id.* at 1304 (citing *Frantz*, 105 F. Supp. at 495). "Having selected this court for the trial of his case," which (as here) was the only court where he could sue the Government for the amount of money sought, the Court held "the trustee [was] bound by all statutes and rules applicable to it." *Id.* at 1303; *id.* at 1304 ("When suit is filed here and the issues are joined, the parties are here for all purposes encompassed within the jurisdiction conferred on this court by Congress").

Nor did Colorado HealthOp's status as an insolvent insurer dissuade either Judge Sweeney in granting Defendant's motion for leave to amend the Answer or the Federal Circuit in *Conway* from finding, or at least acknowledging, the Court's jurisdiction to determine Defendant's right to offset. *See Health Republic*, 150 Fed. Cl. at 240–41 (holding that §§ 1503 and 2508 "provide that any claim for setoff raised by defendant against a plaintiff bringing suit in this court can and must be heard and decided by this court" and rejecting Colorado HealthOp's reverse preemption argument as to jurisdiction); *see also Conway*, 997 F.3d at 1215 (rejecting Defendant's argument that the money judgment in favor of Conway, as liquidator for Colorado HealthOp, was improper under § 2508; finding the trial court fulfilled its obligations under § 2508 by hearing and determining Defendant's offset demand).

In fact, the unique nature of this action quells many of the concerns raised by Colorado HealthOp about the ramifications of the Court exercising its counterclaim jurisdiction. Contrary to its argument, the instant case does not involve a situation where Colorado HealthOp's liquidator is being forced to "defend unconnected suits in different forums across the country," ECF No. 103 at 15 (quoting *Munich Am. Reins.*, 141 F.3d at 593), or where one of Colorado HealthOp's creditors is attempting to "pluck" issues out of the liquidation proceeding and force resolution in other forums, *id.* (quoting *Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277, 1281 (10th

Cir. 1998)).  Instead, Colorado HealthOp affirmatively chose to join this suit against the United States.  Having done so, "there became operative a statutory provision conferring jurisdiction on [this Court] 'to render judgment upon any set-off or demand by the United States'" against Colorado HealthOp.  *Preuss*, 412 F.3d at 488 (quoting *Marley v. United States*, 381 F.2d 738, 741–42 (Ct. Cl. 1967)).  Fears about "conflicting rulings, piecemeal litigation of claims, and unequal treatment of claimants" are likewise not particularly strong here.  Congress vested jurisdiction in this Court to hear money claims against the United States in part to provide uniformity, both in the body of law applied by the trial court and through unified appellate review.  *See Ingalls Shipbuilding*, 13 Cl. Ct. at 763.  And it conferred jurisdiction to this Court to resolve the United States' counterclaims in such suits to ensure efficient and complete (not piecemeal) resolution of the parties' mutual obligations in a single proceeding.  *Id.*  On the other hand, the risk this decision poses to the uniformity of Colorado HealthOp's liquidation proceeding would appear relatively low.  As the Seventh Circuit noted in *Hammer*, "[t]he need for uniform treatment implies that the parties are similarly situated, but [the insurer's] other creditors and debtors are not the federal government."  905 F.3d at 534; *see Ingalls Shipbuilding*, 13 Cl. Ct. at 763 (citing *Cherry Cotton Mills*, 327 U.S. at 539) ("[T]he government as sovereign has legitimate interests that other litigants do not.").

Moreover, the Court's exercise of jurisdiction under §§ 1503 and 2508 does not directly conflict with, invalidate, impair, or supersede the jurisdiction of the state court in relation to Colorado HealthOp's liquidation proceeding.  As more fully discussed below, the same substantive law governing Defendant's right to offset will be applied in either this Court or the state liquidation proceeding.  *See Hammer*, 905 F.3d at 534.  Thus, Defendant will obtain an offset whether through a counterclaim or its proof of claim—thereby "leapfrogging higher priority creditors"—only if the

law provides that right.  Reply in Supp. of Pl.'s. Mot. to Dismiss Def.'s Countercl. at 7, ECF No. 116.  And because Defendant is arguing that its rights to offset, interest, or simply a judgment for the amounts owed by Colorado HealthOp derive from federal law, *see* ECF No. 112 at 22–23, this federal court is uniquely qualified to hear and determine its claim.  Additionally, the Court's exercise of its counterclaim jurisdiction does nothing to divest or diminish the state court's jurisdiction over the liquidation proceeding as a whole or its distribution of Colorado HealthOp's assets, which will continue unabated notwithstanding this decision.  *See Gross*, 217 F.3d at 222. Indeed, to date, the Court has approved stipulated judgments pursuant to RCFC 54(b) in favor of insolvent plaintiffs *and the Government* in both this and another risk-corridors case.  *See* Rule 54(b) J., ECF No. 131 (entering judgments in favor of the Arches Subclass and Defendant and directing a net payment from the Judgment Fund); ECF No. 156 (same as to Meritus Subclass); *see also* Rule 54(b) J., *Common Ground Healthcare Coop. v. United States*, No. 17-cv-877 (Fed. Cl. June 2, 2021) (same as to Freelancers Subclass).  At no time did the parties argue that the Court lacked authority to do so, nor could they waive such a jurisdictional objection, and no party has argued that these judgments interfered with or frustrated the state liquidation proceedings.

For similar reasons, the cases Colorado HealthOp relies on to support its argument that §§ 1503 and 2508 are reverse preempted are distinguishable.  *See* ECF No. 103 at 16 (citing *Munich Am. Reins.*, 141 F.3d at 595–96; *Davister*, 152 F.3d at 1282; *Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 45 (2d Cir. 1995)).  *Munich American Reinsurance*, *Davister*, and *Stephens* involved the question of whether state insurer insolvency laws reversed preempted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.  None of these cases involved the unique circumstances presented here.  Namely, they did not involve a scenario where the insolvent insured (or its liquidator) consented to the jurisdiction of the federal court as to its affirmative claim against a creditor but

disputed the court's co-existent jurisdiction to adjudicate the creditor's counterclaim. Unlike the instant case, it was the creditors in *Munich American Reinsurance* and *Davister* who, unhappy with the liquidators' decisions in connection with the state liquidation proceedings, petitioned the federal district courts for orders compelling arbitration of the parties' disputes. *See Munich Am. Reins.*, 141 F.3d at 587; *Davister*, 152 F.3d at 1278. *Stephens* is more procedurally like the instant case, but in a way that undermines Colorado HealthOp's argument. In *Stephens*, the liquidator initiated a suit against certain creditors in federal court pursuant to the generally applicable diversity jurisdiction statute, seeking outstanding payments owed. *See* 66 F.3d at 42. Notably, the creditors asserted setoff claims. *See id.* at 42–43. Unlike this case, however, the creditors sought an order compelling arbitration of the parties' entire dispute. *See id.* at 43. It does not appear that the liquidator challenged the district court's jurisdiction over the setoff claims; rather, by opposing arbitration he sought to keep the dispute before the federal court. Concluding that the anti-arbitration provision of the state insolvency law reverse preempted the FAA, the Second Circuit did just that. *See id.* at 46. Thus, the case was returned to the district court—not the state liquidation court—for adjudication.[5]

The recent decision in *Richardson* is also distinguishable. Colorado HealthOp argues that *Richardson* should lead this Court to dismiss Defendant's counterclaim based on its discussion of HHS's administrative offset as an improper "collateral[] attack [on] the results of the . . . state

---

[5] From the docket, it appears the parties in *Stephens* ultimately resolved their disputes without the need for a ruling on the merits by the district court. *See Stephens v. Am. Int'l Ins. Co.*, No. 91-cv-6245 (S.D.N.Y.). In a separate suit brought by the liquidator in the same court, however, the same judge granted summary judgment for a creditor on the question of whether state insolvency law permitted its setoff claim. *See Stephens v. Fed. Ins. Co.*, No. 93-cv-4222, 1995 WL 702385, at *2 (S.D.N.Y. Nov. 28, 1995), *aff'd sub nom.*, *Rich v. Fed. Ins. Co.*, 113 F.3d 1230 (2d Cir. 1997).

liquidation process." ECF No. 161 at 7 (quoting *Richardson*, 157 Fed. Cl. at 368). But *Richardson* was not confronted with the question of whether the Court of Federal Claims can hear and determine a setoff counterclaim against an insolvent insurer under 28 U.S.C. §§ 1503 and 2508. Instead, *Richardson* involved a claim that HHS unlawfully asserted an *administrative offset* to account for ACA payments owed by the insurer *after* its liquidator determined in the liquidation proceeding that HHS could not offset such debt. *Richardson*, 157 Fed. Cl. at 352. The parties do not argue that either of these circumstances are present here. Nor does the Court interpret *Richardson*'s collateral-attack discussion as a jurisdictional ruling, as opposed to one basis (of several) supporting its conclusion on the merits of the liquidator's challenge to HHS's offset. Indeed, many of the cases cited in *Richardson* are based on principles of abstention, which presuppose a situation where both federal and state courts have concurrent jurisdiction.[6] *Id.* at 369–70 (citing *inter alia Garrett v. Cassity*, No. 09-cv-1252, 2011 WL 3420606, at *4 (E.D. Mo. Aug. 3, 2011) (rejecting a McCarran-Ferguson Act reverse-preemption argument; finding lack of jurisdiction over counterclaims against insolvent insurer and, even assuming jurisdiction, that abstention would be appropriate); *Levy v. Lewis*, 635 F.2d 960, 963 (2d Cir. 1980) (finding that the McCarran-Ferguson Act supported abstention, not reverse preemption of federal jurisdiction)). In sum, while *Richardson* is persuasive on other points, it does not speak to the jurisdictional issue raised in Colorado HealthOp's motion.

---

[6] *Richardson* clarified that the Court was not declining jurisdiction and did not believe abstention applied. *See* 157 Fed. Cl. at 371 & n.40. Colorado HealthOp has not requested, assuming jurisdiction, that the Court abstain from hearing and determining Defendant's counterclaim.

**C.      Defendant Is Not Entitled to Offset Colorado HealthOp's ACA Payments.**

Colorado HealthOp contends that, under the Federal Circuit's decision in *Conway*, Defendant's counterclaim should be dismissed for failure to state a claim because it is prohibited from offsetting Colorado HealthOp's ACA payments against the risk-corridors payments owing to Colorado HealthOp.  It argues that such an offset is not permitted under Colorado law, nor does Defendant possess a right to offset under federal law.  ECF No. 161 at 3–6; ECF No. 166 at 2–6. Instead, Defendant must stand in line and present its claim in the insolvency proceeding with the rest of Colorado HealthOp's creditors.  ECF No. 161 at 4–6.  According to Colorado HealthOp, that Defendant seeks to offset amounts via a counterclaim instead of administratively, as was the case in *Conway*, is "a distinction without a difference."  *Id.* at 2.  Finally, it points out that §§ 1503 and 2508 merely confer jurisdiction over Defendant's assertion of a setoff claim, not any substantive right to setoff.  ECF No. 166 at 4–6.

Defendant, on the other hand, argues that §§ 1503 and 2508 authorize the Court to offset Colorado HealthOp's debts as a condition of the Government's waiver of sovereign immunity, and that such an offset does not conflict with Colorado's priority scheme.  *See* ECF No. 164 at 13–14, 19–20.  It further argues that nothing in the *Conway* decision, which involved an administrative offset instead of a counterclaim, alters Defendant's right to bring a counterclaim in the Court of Federal Claims nor prevents the Court from entering judgment in Defendant's favor and effectuating an offset in that amount, as authorized by §§ 1503 and 2508.  *Id.* at 17–20.

1.      Defendant's Counterclaim Asserts an Offset Claim.

As an initial matter, the Court finds it necessary to note that Defendant's Amended Answer and Counterclaim explicitly includes an offset claim.  At oral argument, counsel sought to distinguish *Conway* by pointing out that Conway sought to unwind an offset already implemented

by HHS, whereas in the counterclaim "we don't seek an offset . . . What we seek in our counterclaim is a judgment for amounts owed under a statute . . . ."  ECF No. 159 at 31:10–14; *see id.* at 37:5–8, 49:16–25.  However, Defendant's Amended Answer explicitly asserts "that the damages due the Dispute Subclass are subject to offset as set forth in the United States' counterclaim," ECF No. 101 at 1, and Defendant cites in support of its counterclaim HHS's ability to collect outstanding payments through administrative offset under the applicable loan agreement and through the netting regulation at issue in *Conway* (45 C.F.R. § 156.1215), *id.* ¶¶ 9, 18.  Defendant also refers to its right to offset dozens of times in its initial and supplemental briefs and repeatedly cites 28 U.S.C. § 1503, which provides the Court jurisdiction "to render judgment upon any set-off or demand by the United States," as justification for denying the instant motion.  *See generally* ECF No. 112; ECF No. 164; *see also* ECF No. 161 at 4 n.5.

Even in the absence of such express indications, it is obvious that the offset of the amounts owed by Colorado HealthOp against the amounts owed to Colorado HealthOp is a core component of Defendant's counterclaim and the very crux of the parties' dispute given the purported effect entering "*both* a judgment *and* satisfaction of that judgment" against Colorado HealthOp would have on the state liquidation process.  ECF No. 116 at 12.  Indeed, both parties have indicated that liability for their mutual obligations is essentially undisputed.  *See* ECF No. 159 at 10:3–5, 37:22–38:2.  And as past experience has proven, the parties may be able to stipulate to the amounts of each other's judgments.  The real disagreement lies in whether Defendant can deduct Colorado HealthOp's ACA payments from the risk-corridors payments it concededly owes Colorado HealthOp.

2.      Pursuant to *Conway*, Neither Colorado Law nor Federal Law Permit Defendant's Offset Claim.

The Court's analysis of Defendant's right to offset is controlled by the Federal Circuit's decision in *Conway*.   In *Conway*, the Federal Circuit held that the same Colorado insurer insolvency law at issue in this case limits a creditor's offset rights solely to mutual debts or mutual credits arising out of contractual obligations.  997 F.3d at 1204–05 (discussing Colo Rev. Stat. § 10-3-529(1)).   In so holding, the Court rejected the Government's argument that the state law should be read as allowing offsets "whether or not they arise out of contract," which is not substantively different from Defendant's argument here (*see* ECF No. 112 at 39).   *Conway*, 997 F.3d at 1205.   When considering the effect of the state law on Defendant's offset rights under Colorado common law, the Court concluded that the state law "defines all permissible offsets during insurer insolvency," and thus Colorado law provided no common law or equitable right to offset.   *Id.* at 1206 (citing *Bluewater Ins. Ltd. v. Balzano*, 823 P.2d 1365 (Colo. 1992)); *see* ECF No. 112 at 38.

Likewise, the Federal Circuit found no basis for the Government's offset under federal law. First, the Court recognized the relevance of the presumption against federal preemption of state law applied by federal courts, "[p]articularly when 'Congress has legislated in a field in which the States have traditionally occupied," such as insurer insolvency law.   *Conway*, 997 F.3d at 1207 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).   Applying that principle, the Court rejected the Government's position that debts arising under the ACA and HHS's implementing regulations are not subject to Colorado insolvency law, explaining that neither the ACA nor the corresponding regulations indicated a "clear and manifest intent to preempt Colorado law that fixes creditors' rights during insolvency" such that the presumption against preemption could be overcome.   *Id.* at 1208.   It also rejected the Government's claimed right to offset under federal

common law, noting that the Government's "right to offset is generally subject to state priority schemes as a matter of federal common law, absent a statute to the contrary." *Id.* at 1214 (collecting cases). Finally, the Court dismissed the Government's invocation of §§ 1503 and 2508 as supporting a right to offset, explaining that these jurisdictional statutes merely authorize this Court to hear certain claims as opposed to creating substantive rights. *Id.* at 1215.

*Conway* disposes of the offset arguments raised by Defendant in its opposition, which was filed before the Federal Circuit issued the *Conway* decision. *See* ECF No. 112 at 35–39. In its supplemental brief, Defendant seeks to distinguish *Conway* from the present case by emphasizing that it seeks an offset by counterclaim, not an administrative offset. *See* ECF No. 164 at 17–20. Specifically, Defendant argues that §§ 1503 and 2508, operating as express conditions on the Government's waiver of sovereign immunity, guarantee the Government's "right to seek and obtain recovery through offset or entry of judgment upon its counterclaims." *Id.* at 20. But the Court fails to see any material distinction between an administrative offset and an offset raised in a counterclaim, so far as it relates to the jurisdictional question presented here. An offset in either form presupposes an underlying substantive legal right to do so, which was categorically rejected by the Federal Circuit in *Conway*.

The Court further concludes that, although §§ 1503 and 2508 provide the Court authority to hear and determine Defendant's right to offset, they do not provide Defendant with a substantive right. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100 (1992) (Thomas, J., concurring)) (explaining that, ordinarily, "jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties'"). The text of the §§ 1503 and 2508 confirms as much. Section 2508 provides that, in cases where the United States brings a setoff "against any plaintiff making claim

against the United States in [this] court, *the court shall hear and determine* such claim or demand both for and against the United States and plaintiff." 28 U.S.C. § 2508 (emphasis added). As explained in *Conway*, this provision does not require the Court to rubber-stamp any setoff demanded by the Government, but rather requires the Court to determine if any such claim for setoff has legal merit. *See* 997 F.3d at 1215. Likewise, § 1503 states that "[the] Court of Federal Claims *shall have jurisdiction* to render judgment upon any set-off or demand by the United States against any plaintiff in such court." 28 U.S.C. § 1503 (emphasis added). Again, nowhere in its brief text does the provision create or recognize a substantive offset right that trumps the rights of other creditors in a state insolvency proceeding. Instead, a plain reading of §§ 1503 and 2508 indicates that the Court merely has jurisdiction to render judgment on the Government's claim for an offset, in the event a claim for offset is asserted and established.

Finally, in its opposition, Defendant contends that dismissing its counterclaim would be futile because 31 U.S.C. § 3728 requires the Secretary of the Treasury to effectuate an offset when paying judgments against the United States, regardless of whether the plaintiff is insolvent. *See* ECF No. 112 at 41; *see also* 31 U.S.C. § 3728(a) ("The Secretary of the Treasury shall withhold paying that part of a judgment against the United States Government presented to the Secretary that is equal to a debt the plaintiff owes the Government."). *Richardson* recently rejected the same argument, and further held that the Government could not invoke § 3728(a) to offset the final judgment entered in that case considering the court's determination that offset was precluded under the parties' contract. *See* 157 Fed. Cl. at 375–76. *Richardson*'s reasoning is persuasive, but for purposes of the instant motion the Federal Circuit's rejection of the same futility argument in *Conway* provides sufficient grounds to dispense with the argument here. *See Conway*, 997 F.3d at 1215–16 (finding that, "[b]y its terms, § 3728 only applies if 'a judgment' has been entered"

and thus "does not prevent the Claims Court from entering judgment").  In short, § 3728 provides
no reason why Defendant's claim for offset should otherwise survive dismissal.

### D.    Defendant's Interest Claim Also Fails as a Matter of Law.

Even assuming Defendant stated a valid claim entitling it to an offset, its counterclaim must
be dismissed to the extent it seeks interest.  Under the so-called "interest on the balance rule,"
Colorado HealthOp argues that Defendant—as the net debtor—cannot claim prejudgment interest
because Defendant owes more to it in risk-corridors payments than Colorado HealthOp owes
Defendant in other ACA obligations.  ECF No. 103 at 18.  Colorado HealthOp further contends
that Colorado's insurer insolvency law fixes the rights and liabilities of an insolvent insurer upon
issuance of an order of liquidation and that, under the McCarran-Ferguson Act, this state law
preempts the federal statutory basis for its assertion of post-liquidation interest.  *See id.* at 20 (citing
31 U.S.C. § 3717 and 45 C.F.R. § 30.18).[7]  The Court addresses each argument in turn.

First, Colorado HealthOp asks the Court to follow *Local Oklahoma Bank, N.A. v. United
States*, 59 Fed. Cl. 713, 722 (2004), *aff'd*, 452 F.3d 1371 (Fed. Cir. 2006), in applying the interest
on the balance rule.  In that *Winstar*-related case, a bank sued the Government for breach of
contract after the Government induced the bank to take responsibility for a failing thrift in
exchange for the opportunity to claim covered asset loss ("CAL") tax deductions.  *Id.* at 715.
Congress subsequently eliminated CAL tax benefits for acquired thrifts through the Omnibus

---

[7] Section 3717 provides that "[t]he head of an executive . . . agency shall charge a minimum
annual rate of interest on an outstanding debt on a United States Government claim owed by a
person" pursuant to the rate prescribed by the Secretary of the Treasury.  31 U.S.C. § 3717(a)(1).
Pursuant to this statutory authority, the cited HHS regulation requires the agency to charge interest
"on delinquent debts owed to the United States" and provides that interest "shall continue to accrue
until the debt is paid in full or otherwise resolved through compromise, termination, or waiver of
the charges."  45 C.F.R. § 30.18(a).

Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312, 485 (1993).  *Id.* at 716.  Soon

after, the bank withheld $20 million in non-CAL tax sharing payments as a "self-help" setoff and

filed suit against the Government for, among other claims, breach of contract.  *Id.*  The Government

counterclaimed for the $20 million in withheld tax sharing payments, plus accrued interest.  *Id.* at

717.  On motion for summary judgment, the parties disputed whether prejudgment interest should

be assessed against the bank based on the full amount of the Government's counterclaim or the

counterclaim less the bank's recovery.  *Id.* at 721.  Because the parties' claims "[arose] out of

related transactions," the Court applied the "interest on the balance" rule and held that interest was

available only on the difference between the two claims—*i.e.*, after offsetting the Government's

counterclaim against the bank's liquidated claim, interest should be calculated on the remaining

balance.  *Id.* at 722–23.

Defendant's only argument against application of the interest on the balance rule in this

case is that Defendant is not seeking prejudgment interest, but rather interest on delinquent ACA

debt as required by 45 C.F.R. § 30.18(a).  *See* ECF No. 112 at 31, 32.  Since the claimed interest

is imposed by law rather than being a function of the Court's discretion, Defendant argues it is not

"prejudgment interest" and thus not subject to the interest on the balance rule.  *Id.* at 32.  Otherwise,

Defendant does not dispute that it is the net debtor or that the parties' mutual obligations at issue

arise from related transactions under the ACA.  *See id.* at 32–34; *see* ECF No. 103 at 18 n.7 & 9.

The Court agrees with Defendant that the interest charged under 45 C.F.R. § 30.18 is not

solely focused on prejudgment interest and serves a different, although arguably overlapping,

purpose.  "Prejudgment interest serves to compensate [a litigant] for the loss of use of money due

*as damages* from the time the claim accrues *until judgment is entered*."  *West Virginia v. United*

*States*, 479 U.S. 305, 310 n.2 (1987) (emphasis added).  On the other hand, interest assessed on

delinquent debt serves the purpose of "increasing the efficiency of government efforts to collect debts owed to the United States" regardless of whether a judgment is ever obtained.  *Commw. of Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.* ("*Pa. DPW*"), 101 F.3d 939, 941 (3d Cir. 1996) (reviewing a challenge to the prior version of 45 C.F.R. § 30.18, then-codified at § 30.13).  And here, such interest "continue[s] to accrue *until the debt is paid in full* or otherwise resolved through compromise, termination, or waiver of the charges."  45 C.F.R. § 30.18(a) (emphasis added); *see United States v. Am. Ins. Co.*, 18 F.3d 1104, 1108 n.5 (3d Cir. 1994) (noting that interest accruing "to entry of judgment" and "until paid" encapsulated both pre- and post-judgment interest).  At the same time, the Court recognizes that the term "prejudgment interest" has been used broadly to also describe interest on delinquent debt.  *See* ECF No. 116 at 14–16; *see also Pa. DPW*, 101 F.3d at 942 (citing *United States v. Texas*, 507 U.S. 529, 536 (1993) (stating that "Section 3717(a) requires federal agencies to collect prejudgment interest")).

Ultimately, the Court need not determine whether the interest on the balance rule discussed in *Local Oklahoma Bank* should be extended beyond a case involving only a claim for non-statutory prejudgment interest.  As Colorado HealthOp correctly argues, the "common-sense proposition" embodied by the rule appears to be "fully consistent with the text of 45 C.F.R. § 30.18(a), which provides only for the Government to assess interest in a particular amount 'on delinquent debts owed the United States.'"  ECF No. 116 at 16.  It argues that Defendant has failed to cite any authority suggesting or requiring that the amount of the "'delinquent debts owed to the United States' should be calculated without reference to any offset for what the United States owes the putative debtor."  *Id.*  Indeed, the authority Defendant cites provides the exact opposite.

In its opposition, Defendant asserts that HHS's netting regulation, 45 C.F.R. § 156.1215, defines the "determination of debt" that in turn requires the imposition of interest under § 30.18. ECF No. 112 at 31.  Promulgated under ACA authority, this regulation provides that:

> Any amount owed to the Federal government by [a QHP] . . . for advance payments of the [ACA's] premium tax credit, advance payments of and reconciliation of cost-sharing reductions, Federally-facilitated Exchange user fees, including any fees for State-based Exchanges utilizing the Federal platform, risk adjustment, reinsurance, and risk corridors, *after HHS nets amounts owed by the Federal government under these programs*, is a determination of a debt.

45 C.F.R. § 156.1215(c) (emphasis added).  Of course, Defendant has not netted Colorado HealthOp's payments, nor can it pursuant to *Conway*.  However, the plain text of the regulation relied on by Defendant suggests that HHS itself considers the amounts owed by the Government under the ACA when determining a QHP's debt.  In essence, the regulations appear to take an interest on the balance approach.  That is, the amount of Colorado HealthOp's outstanding ACA payments would be a debt subject to interest only if (and to the extent) such amount exceeded Defendant's outstanding ACA payments to Colorado HealthOp.  *See id.*; *see also id.* § 30.18(a). Here, Defendant concedes that Colorado HealthOp is entitled to recover risk-corridors payments, which allegedly total around $111 million; it claims Colorado HealthOp owes the United States approximately $ 20 million in outstanding ACA payments.  *See* ECF No. 101 at 1; *id.* ¶¶ 52–55; *see also* ECF No. 103 at 9.

Second, even assuming interest could be imposed on the amount of its outstanding ACA payments, Colorado HealthOp argues that the McCarran-Ferguson Act reverse preempts 31 U.S.C. § 3717 and 45 C.F.R. § 30.18, and thus precludes Defendant's interest claim, because Colorado's insurer insolvency law fixes the rights and liabilities of an insolvent insurer upon issuance of an order of liquidation.  *See* ECF No. 103 at 19–20 (citing Colo. Rev. Stat. § 10-3-517(2)).  Defendant disagrees, arguing that Colorado HealthOp has failed to demonstrate that this particular provision

of Colorado's law was enacted "for the purpose of regulating the business of insurance" and is invalidated, impaired, or superseded by the federal laws at issue.  ECF No. 112 at 33.  According to Defendant, that the continuing accrual of interest on Colorado HealthOp's outstanding ACA payments might shrink the size of its estate does not alone impair or otherwise interfere with the operation of the state insolvency law.  *Id.* (citing *Suter*, 223 F.3d at 161).

As Colorado HealthOp correctly notes, the same analysis performed in *Conway* largely applies to the issue of interest in this case and, for many of the same reasons, would defeat Defendant's interest claim.  *See* ECF No. 161 at 5 n.6.  Defendant has not pointed to anything in the federal debt collection scheme—generally or specifically related to ACA debts—that would rebut the "presumption against preemption [of] insurer insolvency law."  *Conway*, 997 F.3d at 1207; *see id.* at 1208 ("[F]or federal law to control in state insurer insolvency proceedings, the government must overcome the presumption against preemption.").  Nor has the Court identified in the text or purpose of the federal laws at issue an indication that Congress had a "clear and manifest intent to preempt" state insurer insolvency laws that, like Colorado's law, fix the rights and liabilities of insurers and creditors upon an order of liquidation.  *Id.* at 1208.  Both 31 U.S.C. § 3717 and 45 C.F.R. § 30.18 are silent as to whether and how interest should be assessed on debts owing from insolvent insurers (or any other type of insolvent debtor).  And the structure and purpose of these laws, which seek to improve federal debt collection efforts, do not suggest let alone clearly show that Congress was aimed at ensuring interest would accrue on the debt of insolvent insurers notwithstanding pending liquidation proceedings.  In fact, the Supreme Court has recognized that interest on delinquent debt has long been considered incompatible with the prohibition on interest in insolvency.  *See Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163–64 (1946) (explaining that "exaction of interest" is "considered in the nature of a

penalty imposed because of delay in prompt payment" and is generally not allowed in bankruptcy and receivership because the delay attributable to the proceedings is "necessitated by law").  Had Congress intended to circumvent this general rule, it could have said so.

The same conclusion should be reached applying a reverse preemption analysis under the McCarran-Ferguson Act.  The Supreme Court's decision in *Fabe* leaves little doubt that § 10-3-517(2) was enacted to regulate the business of insurance.  *See* ECF No. 116 at 17 (citing *Fabe*, 508 U.S. at 501).  When determining whether a state statute meets this factor, the focus of the analysis hinges on the "relationship between the insurance company and its policyholders." *Fabe*, 508 U.S. at 501.  "Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.'" *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969).  In *Fabe*, the conflicting state and federal laws at issue placed the United States in different positions of priority for repayment of the bankrupt debtor's obligations, the Ohio statute placing the United States in fifth priority while the federal statute (31 U.S.C. § 3713) placed the United States first.  *See* 508 U.S. at 493.  The Supreme Court held that "[t]he primary purpose of a statute that distributes [an] insolvent insurer's assets to policyholders in preference to other creditors is identical to the primary purpose of the insurance company itself: the payment of claims made against policies." *Id.* at 505–06.  Thus, to the extent it served to guarantee policyholders received payments on their claims, the Ohio law regulated the business of insurance and reverse preempted the federal statute.  *Id.* at 506.  Wage and general creditor claims, however, did not escape federal preemption.  *See id.* at 509.

The Colorado statutory provision at issue in this case states that "[u]pon issuance of the order [of liquidation], the rights and liabilities of any such insurer and of its creditors, policyholders, shareholders, members, and all other persons interested in its estate shall become

fixed as of the date of entry of the order of liquidation."  Colo. Rev. Stat. § 10-3-517(2).  Like the priority provision in *Fabe*, this provision is "aimed at protecting or regulating . . . the relationship between the insurance company and its policyholders."  *Fabe*, 508 U.S. at 491 (citing *Nat'l Sec.*, 393 U.S. at 460).  By fixing the rights and liabilities of the debtor, its creditors, and any other interested party at the time of liquidation, § 10-3-517(2) essentially freezes the state of an insolvent insurer's assets thereby protecting the policyholders' commercial expectations, which otherwise could be disrupted by ever-increasing liabilities during the liquidation proceedings.  *See Conway*, 145 Fed. Cl. at 529.  This ensures a more efficient and administratively manageable liquidation process.  More importantly, it guarantees that policyholders will not stand to recover less on their claims (or have them diminished out of existence) by the continuing accrual of other creditors' obligations.  *See Fabe*, 508 U.S. at 506 ("The Ohio statute is enacted 'for the purpose of regulating the business of insurance' to the extent that it serves to ensure that, if possible, policyholders ultimately will receive payment on their claims.").  The provision is especially critical to protecting policyholders from a dwindling estate because the delay in payment that typically causes interest to accrue is a necessary consequence of the liquidation proceeding itself.

It is equally clear that 31 U.S.C. § 3717 and 45 C.F.R. § 30.18 "directly conflict with" and "frustrate" the declared policy of the Colorado statutory provision fixing rights and liabilities upon an order of liquidation, and thus they would impair the state law to the extent that they imposed post-liquidation interest.  *See Humana*, 525 U.S. at 310; *id.* at 309–10 (defining "impair" as "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner" (quoting Black's Law Dictionary 752 (6th ed. 1990)).  The Federal Circuit in *Conway*, citing the same Colorado law at issue here (§ 10-3-517), provided that "[i]f a 'State court . . . order' fixes creditors' rights, then the implication is state solvency law ordinarily defines those rights."

997 F.3d at 1212.  Defendant, however, seeks to have its right to continually accruing interest defined under federal law.  The Court would be hard-pressed to find a clearer conflict between a law that imposes interest on a debt *until it is paid* and a state law that fixes all rights and obligations *at the time of liquidation*.

Defendant argues that Colorado's insurer insolvency law can operate concurrently with the federal laws undiminished because "[t]he net proceeds of any judgment that Colorado Health . . . receive[s] will be distributed to policyholders and other creditors in the liquidation proceedings according to their relative priority as determined by state law."  ECF No. 112 at 33.  This argument misses the mark.  *See* ECF No. 116 at 18.  While the federal laws in question do not necessarily supersede Colorado's order of distribution for the proceeds of any judgment in this action, allowing Defendant to recover interest accrued since the order of liquidation (entered six and one-half years ago) would impair Colorado's law fixing rights and liabilities in insolvency, which in turn determines the amount of those proceeds.  *See* ECF No. 116 at 18; ECF No. 103 at 20.  In short, Defendant's ability to enlarge its take through the addition of interest during insolvency directly conflicts with Colorado's insurer insolvency law at the expense of policyholders.  As such, Defendant has not stated a valid claim for interest.

**E.   To the Extent Defendant's Counterclaim Seeks Only Judgment on the Amounts Owed by Colorado HealthOp to the United States Pursuant to the ACA, Such Claims Survive Dismissal.**

Although the Court finds that Defendant has not stated a valid counterclaim for offset or interest, the lack of a substantive right supporting those claims does not mean that Defendant's counterclaim must be dismissed in its entirety.  As explained above, the Court has jurisdiction to hear counterclaims and other demands asserted by the United States against plaintiffs bringing actions in the Court of Federal Claims.  Notwithstanding offset and interest, Defendant's counterclaim alleges that Colorado HealthOp owes the United States certain amounts for risk

adjustment charges, reinsurance contributions, CSR reconciliation charges, and risk adjustment user fees. *See* ECF No. 101 ¶¶ 26–33, 52–55. Because Colorado HealthOp has not moved to dismiss those claims pursuant to RCFC 12(b)(6), other than to the extent they are asserted as an offset, the claims may proceed. Should the Court determine Defendant is entitled to recover those amounts from Colorado HealthOp, the Court's order would not direct a net payment deducting the amount of Defendant's judgment from the amount of risk-corridors payments owed to Colorado HealthOp. Instead, Defendant may continue to pursue its proof of claim, with a judgment in hand, in the Colorado insolvency proceeding.

## III. CONCLUSION

For these reasons, the Court concludes it has jurisdiction over Defendant's counterclaim; however, Defendant's claims for offset and interest fail as a matter of law. Accordingly, Colorado HealthOp's Motion to Dismiss (ECF No. 103) is **DENIED IN PART** as to its request for dismissal under RCFC 12(b)(1). The motion is **GRANTED IN PART** as to its request for dismissal under RCFC 12(b)(6) to the extent Defendant's counterclaim seeks offset and interest. Colorado HealthOp shall file its Answer to Defendant's Counterclaim by no later than September 2, 2022.

**SO ORDERED**.

Dated: August 19, 2022                                   */s/ Kathryn C. Davis*
                                                         KATHRYN C. DAVIS
                                                         Judge